UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Richard Sharif, | ) | Case No. 09 B 05868 |
| | ) | |
| Debtor. | ) | |
| ———————————— | ) | |
| | ) | |
| Richard Sharif, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Pro. 20 A 00399 |
| | ) | |
| Horace Fox Jr., et al., | ) | |
| | ) | |
| Defendants. | ) | Judge Jacqueline P. Cox |

**Memorandum Opinion on Motions to Dismiss**
**(Docket Nos. 23, 32, 52, 53, 54, 56, 89 and 91)**

This adversary proceeding is Debtor Richard Sharif's latest, and hopefully final effort

"to prolong this contumacious litigation for purposes of harassment or delay, or both." *Sharif v.*

*Wellness Int'l Network, Ltd.*, 273 Fed.App'x 316, 317 (5th Cir. 2008).

This matter has its roots in a contract action litigated in the U.S. District Court for the

Northern District of Texas. Richard Sharif ("Sharif") and others sued Wellness International

Network, Ltd. and Ralph and Cathy Oats (collectively, "Wellness") alleging fraud and violations

of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Sharif failed to comply

with his discovery obligations; the district court granted summary judgment in favor of Wellness.

The Fifth Circuit Court of Appeals affirmed, making the observation noted above about the purpose of the litigation. That Court also noted that "[t]ime is long overdue to terminate Appellants' feckless litigation . . ." *Id.* On remand the Northern District of Texas ordered Sharif and his co-plaintiffs to pay Wellness attorneys fees in the amount of $655,596 as a sanction. *Sharif v. Wellness Int'l Network, Ltd.*, 2008 WL 2885186, * 4 (N.D. Tex. July 22, 2008).

When Wellness tried to enforce the sanctions award Sharif again refused to comply with discovery requests. He was held in contempt on February 10, 2009; he filed this bankruptcy case two weeks later on February 24, 2009.

Each Defendants' motions to dismiss will be granted with prejudice because Sharif's amended complaint is legally insufficient, devoid of grounds for recovery under all theories asserted. Trustee Fox has adopted the motion to dismiss filed by Defendants de'Medici and Block. Docket 54.

Sharif will be ordered to show cause why he should not be sanctioned under Federal Rule of Civil Procedure 11, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 9011, for pursuing the baseless allegations herein and refusing to abide by various appellate rulings. Sharif's sisters Ragda Sharifeh, Haifa Sharifeh and Attorney Maurice J. Salem were sanctioned pursuant to Civil Rule 11 in 2017 for failing to abide by appellate mandates that the Soad Wattar Trust was property of the bankruptcy estate when they filed groundless motions that caused unnecessary delay and increased the cost of litigation. *In re Sharif,* 564 B.R. 328 (Bankr. N.D. Ill. 2017) (Attorney Maurice Salem was fined $20,000 and barred from filing pleadings in this bankruptcy case and related adversary proceeding without first obtaining leave of court. The sisters were barred from filing pleadings in this case and related adversary

proceedings. This matter is on appeal in the district court.).

## I. Jurisdiction

Federal district courts have original and exclusive jurisdiction of all cases under title 11, the Bankruptcy Code. 28 U.S.C. § 1334(a). The district courts may refer cases under title 11, and any or all proceedings arising under title 11 or arising in or related to a case under title 11, to the bankruptcy judges for their district. 28 U.S.C. § 157(a). The District Court for the Northern District of Illinois has referred its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Operating Procedure 15(a).

Bankruptcy courts have statutory authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). Core proceedings include this matter concerning the administration of the estate - an effort to sue bankruptcy estate professionals and others regarding, in part, their involvement in the Debtor's bankruptcy and divorce cases, referred to this court by the district court. Docket 1, Order Transferring Civil Action 19-cv-6035 to this court. 28 U.S.C. § 157(b)(2)(A).

## II. Background

The Plaintiff in this adversary proceeding is Debtor Richard Sharif ("Sharif") who alleges that the Defendants, his wife, Luma Hambaroush-Sharif, Bankruptcy Trustee Horace Fox Jr., the Trustee's Attorneys Bruce de'Medici and Bradley Block, Arthur Newman and Jonathan Anderson are civilly liable to him for violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(c), breach of fiduciary duty, negligence and

conspiracy.

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

While the amended complaint, at Adversary Proceeding 20-00399, Docket 1, Parts 63-66, describes some of the elements of a civil RICO claim, it does not satisfy Federal Rule of Civil Procedure 9, made applicable by Federal Rule of Bankruptcy Procedure 7009. Rule 9 requires that allegations of fraud or mistake be stated specifically, describing the circumstances amounting to fraud or mistake.

> If a RICO claim is based on an allegation of fraud, the complaint must specify (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud.

*Nero v. Mayan Mainstreet Inv. 1, LLC*, 645 Fed.Appx. 864, 868 (11th Cir. 2016) (RICO claim dismissed for failure to state a claim) (internal citation omitted). Civil RICO allegations are subject to Civil Rule 9(b)'s heightened pleading standards for fraud allegations. *In re Testosterone Replacement Therapy Products Liability Coordinated Pretrial Proceedings v. Abbvie*, 159 F.Supp.3d 898, 909 (N.D. Ill. 2016).

The Defendants seek dismissal of the amended complaint under Civil Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.

Civil RICO claims have to include (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019).

-4-

A pattern requires at least two predicate acts of racketeering activity that are related and continuous. *Boneta v. Rolex Watch USA, Inc.*, 232 F.Supp.3d 354, 358 (S.D.N.Y. 2017). In addition, a plaintiff who claims to have been injured by reason of a RICO predicate offense has to show that the offense not only was a "but for" cause of his injury, but was the proximate cause as well. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 2 (2010). In *Hemi* the City of New York sued an out-of-state cigarette retailer asserting civil RICO claims because the retailer did not file sales reports with the state of New York that would have been sent to the City by the state to allow the City to collect its tax on the possession of cigarettes. The court ruled that to show that an injury came about by reason of a civil RICO offense, a plaintiff has to show that a predicate offense not only was a but for cause of his injury, but was the proximate cause. It said that the City's theory required the court to extend RICO liability to situations where the defendant's fraud on the third party (the State) has made it easier for a fourth party (the taxpayer) to cause harm to the plaintiff, the City, and that the City was directly harmed by the customers, not by Hemi. *Id.*, at p. 3. A civil RICO plaintiff has to show a direct link between its injury and the injurious conduct alleged. Sharif has not alleged a direct link, that a predicate offense caused his injury. He has not alleged with specificity something that the Defendants did, just conclusions.

District Judge Leinenweber affirmed this court's entry of a default judgment that declared, as requested by Wellness, that the Soad Wattar Trust be found to be Sharif's alter ego. Sharif is responsible for the entry of the default judgment that denied him a discharge as well as the declaration about the trust, making it property of the bankruptcy estate from the date he sought bankruptcy relief. *Sharifeh v. Fox*, 2012 WL 469980 (N.D. Ill. February 10, 2012).

-5-

### III. Civil Rule 12(b)(6) Motions to Dismiss

The pleading requirements of Federal Rule of Civil Procedure 8(a)(1), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7008, requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

The Defendants ask that Sharif's amended complaint be dismissed for failure to state claims upon which relief can be granted and for lack of jurisdiction based on the exclusion of federal jurisdiction for domestic relations matters. Motions to dismiss for failure to state a claim test the legal sufficiency of the plaintiff's claims. The court takes as true the well-pleaded allegations in the amended complaint and draws all reasonable inferences in favor of the non-movant, Sharif. *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 454 (7th Cir. 2020), citing *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018) ( In reviewing dismissal for failure to state a claim, the Court accepted facts alleged by plaintiffs without vouching for their objective truth: "We thus do not vouch for the objective truth of the plaintiffs' allegations summarized here.").

The complaint must contain enough factual information to give defendants fair notice of the claims. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In addition, it has to plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate only if it is clear in the pleadings that no set of facts could be proven in support of the plaintiff's claims that would entitle him to the relief requested. *Panarus v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir. 1996).

Because the amended complaint points almost entirely to conclusions without specificity

-6-

the motions to dismiss will be granted.  Sharif does not seek leave to amend in any of his

Responses to the motions.  *See* Response Pleadings at Dockets 47, 76, 77 and 78.   In any event,

because he can't show that anyone's conduct caused his alleged injury, the amended complaint

will be dismissed in its entirety with prejudice as to each Defendant.

### IV. Amended Complaint's Conclusory Allegations

The amended complaint does not state with specificity what his estranged wife or the

other Defendants did that warrants civil RICO liability.  It alleges only conclusions: Fox schemed

with Wellness to get the trust to be Richard's alter ego by default; Wellness claimed that Richard

and his counsel failed to produce all the documents it requested and moved for default; his

estranged wife and the child representative Arthur Newman (who allegedly abused his position in

the divorce case by pressuring Richard and his family into settling the bankruptcy case and to

accept their loss) and Defendant Jonathan Anderson, his wife's attorney, conspired with the other

Defendants to deprive Sharif of his rights.  These conclusions do not state what the Defendants

did, when they did it or how their conduct satisfies the predicate act and RICO causation

requirements, not to mention the requirement that there be at least two predicate acts that are

related and continuous.

While the court realizes that it cannot resolve disputed factual issues at this stage of the

proceeding, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), it will point out

certain settled factual and legal issues that have been ruled on by several courts since 2009 for

the limited purpose of determining whether the dismissal herein should be with prejudice or

without prejudice.

All conclusory statements will be disregarded. *Testosterone Proceedings*, 159 F.Supp.3d,

at 909.

The allegation that Chapter 7 Trustee Horace Fox Jr. schemed with Wellness to get the trust to be declared Sharif's alter ego by default fails to recognize that the trust was declared his alter ego because he failed to comply with various parties' discovery requests in adversary proceeding 09-00770. He failed to do so in the face of the Count V claim therein that sought a declaration that the trust was his alter ego.

Wellness' claim that Sharif and his counsel failed to produce all documents it requested is reflected not only in the affirmance entered by District Judge Leinenweber as noted above, but also by District Judge Durkin *in Stevens v. Sharif*, where Sharif's former attorney sued him in the district court for past due legal fees. Sharif filed a counterclaim alleging that the attorney's legal malpractice caused the loss of the trust. District Judge Durkin rejected Sharif's legal malpractice claim, in part, noting that his discovery failures merited entry of the default judgment on the alter ego claim:

> Regarding the bankruptcy court proceedings in particular, the bankruptcy court described a long list of highly relevant documents Sharif failed to produce. Sharif's failures to produce documents evinced not simply negligence, but an intent to hide the extent of his finances. Debtors must be thoroughly financially transparent in order to be entitled to the extraordinary relief of debt discharge available in the bankruptcy court. The lack of transparency on the level exhibited by Sharif merited judgment against him as an appropriate sanction.

*Stevens v. Sharif*, 2019 WL 4862171, *5 (N.D. Ill. September 30, 2019) (*aff'd*, in part, 838 Fed.Appx. 200 (Mem.)7th Cir. 2021) (Judgement vacated to the extent it required the trust to pay anything to Stevens and otherwise affirmed).

Sharif caused the default to be entered, and the resulting default judgment's declaration that the trust was his alter ego, by failing to satisfy his discovery obligations.

-8-

The amended complaint's conclusion that Fox, de'Medici and Block conspired with Sharif's estranged wife and Newman does not provide the kind of information relevant to the elements of a civil RICO claim. What are the two predicate offenses that caused Sharif's alleged injury? The claim that Anderson conspired with the other Defendants to deprive him of his rights is likewise fatally conclusory.

In his statement of facts on page 3 of the amended complaint Sharif alleges that he has been employed at his sister's pharmacy since 1995 and remains in that status due to his inability to obtain credit to open his own pharmacy. Again while the court can't and does not resolve factual issues at this stage of this case, it will consider Sharif's prior statements about ownership of the pharmacy to decide whether dismissal will be entered with or without prejudice. The court may take judicial notice of court records. *In re Brent*, 458 B.R. 444, n. 5 (Bankr. N.D. Ill. 2011) ("The court can take judicial notice of matters in its own records.").

At the initial section 341 creditors' meeting Wellness and the Chapter 7 Trustee asked Sharif to provide documents relating to a loan application where he asserted that he owned various assets, including the Logan Square MRI and Diagnostic Center, Sharif Pharmacy, Hermosa Medical Center, three bank accounts, a retirement fund and real estate valued at $1,400,000. Sharif did not provide the documents at the continued creditors' meeting; he then alleged that none of the loan application assets belonged to him, that they belonged to the trust of which he was the trustee and that he had lied when he represented that he owned the assets listed in the loan application. At a Bankruptcy Rule 2004 examination Sharif confirmed under oath that he testified at the section 341 creditors' meeting that he lied in the loan application. *In re Sharif*, 549 B.R. 485, 493-94 (Bankr. N.D. Ill. 2016) (Prior affirmance vacated in part and

remanded: *In re Sharif*, 2017 WL 4310538 (N.D. Ill. September 28 2017); (Ruling on Remand: *In re Sharif*, 2019 WL 384916 (Bankr. N.D. Ill. January 29, 2019)).

Sharif also complains that Defendant Fox, the Chapter 7 Trustee, knew or should have known that he had no assets in 2009 and had a fiduciary duty to diligently and truthfully represent the estate. This conclusory statement at ¶ 12 of the amended complaint, as an allegation that a defendant is not truthful, does not comply with the dictate of Civil Rule 9(b) that statements alleging fraud or mistake have to be stated with particularity regarding its circumstances. Again, while it would be improper for the court to consider facts outside the amended complaint in ruling on the motions to dismiss, it notes that the Trustee may not have known whether Sharif had assets because he failed to comply with discovery requests filed by creditor Wellness and the Trustee. Considering the varying assertions about who owns what in this case, it may not be reasonable to charge Trustee Fox with knowing what Sharif did or did not own. Again, it would be improper to resolve factual issues on a motion to dismiss; this observation informs that dismissal herein should be with prejudice.

The amended complaint at ¶ 16 states that two years before the bankruptcy case was filed Sharif's appointment as trustee of the Soad Wattar Trust was revoked and that his sister Ragda Sharifeh was appointed as its successor trustee. Again, this statement is devoid of the kind of specificity that Civil Rule 9 requires. In any event, had Sharif disclosed information regarding the formation and operation of the trust, the Defendants might be expected to know whether this assertion is true. The court will not weigh the absence of discovery in resolving the general merits of the motion to dismiss. It is, however, a reason to grant the motions to dismiss with prejudice.

Sharif alleges that a residence at 36 Revere Drive, South Barrington, Illinois became and remains a trust asset and that Defendants Fox, de'Medici, Block and Newman have unlawfully conspired to have it removed from the trust. Amended Complaint, ¶¶ 18-19. His failure to comply with discovery has deprived the parties and the court of information regarding ownership of the residence. In any event, the allegation is devoid of the specificity required by Civil Rule 9(b).

Sharif also complains that the Defendants fraudulently seized an insurance policy issued by the Hartford Insurance Company and that they should have known that the policy's proceeds were not part of the bankruptcy estate. Lacking the requisite specificity, this allegation, too, can not survive the motions to dismiss. Paragraph 20 of the amended complaint mentions two Illinois statutes: ILCS 215-5/238 and 735-5/12-1001(f). The prior citation may be directed at 215 ILCS 5/238; it does not include a chapter reference before the "ILCS" designation. That provision states generally that insurance proceeds payable because of an insured's death and the cash value of certain policies payable to a wife, husband or dependent are exempt from execution or attachment for the debts of the insured incurred after the effective date of the statute. Again, the amended complaint does not specify how this provision affects Sharif. General conclusions do not satisfy Civil Rule 9(b)'s dictates. The amended complaint's citation to 735-5/12-1001(f) is also devoid of specificity. That statute provides exemptions from judgment and attachment for a debtor's personal property. What does it mean herein?

Paragraph 20's accusation against Trustee Fox for seizing exempt insurance proceeds cites *Petroleum v. Fisher*, 298 Ill. App. 3d 1007, 1011 (1dt (sic) Dist. 1998). No such case can be located. Perhaps, the Debtor meant to cite *Perelman v. Fisher*, 298 Ill.App.3d 1007 where an

-11-

insured sued an insurance broker for breach of duty and misrepresentation after the broker

procured a disability policy that did not provide cost-of-living adjustments. Courts should not

have to ask why a statute or caselaw has been cited or wonder what a brief means. *U.S. v.*

*Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried

in briefs.").

Sharif complains in paragraphs 22 through 25 of the amended complaint that his

estranged wife claimed in their divorce case that the Soad Wattar Trust and other properties were

marital property, including the residence in South Barrington. He alleges that she conspired with

Fox, de'Medici, Anderson and Newman to obtain money from the trust which was part of the

bankruptcy estate. He also complains that Defendant Anderson joined Newman and his

estranged wife to falsely assert that Sharif owns various companies that belong to members of his

family. What were the false statements? What did each Defendant do? Did the Defendants

know that Sharif did not own the property in issue? Did they cause the judge in the divorce case

to incarcerate him? The lack of specificity required by Civil Rule 9(b) warrants dismissal.

## V. Domestic Relations Exception to Federal Jurisdiction: Rule 12(b)(1) Dismissal

The Domestic Relations Exception to federal jurisdiction dooms many of Sharif's

claims. In 1858, the Supreme Court disclaimed jurisdiction in federal courts upon the subject of

divorce and alimony. *Barber v. Barber,* 62 U.S. 582, 583 (1858). The domestic relations

exception "denies federal jurisdiction to grant a divorce or exercise the other characteristic

powers of domestic relations court." *Jones v. Brennan,* 465 F.3d 304, 306 (7th Cir. 2006). The

state courts "have more experience in divorce, alimony, and child custody matters and are more

closely associated with the state and local government organizations dedicated to handling such

-12-

issues." *Dillon v. Alan H. Schrifin & Assocs., LLC,* 2017 WL 2480706, * 3 (N.D. Ill. June 8, 2017). Do Sharif's claims transcend the exception? His amended complaint's lack of specificity makes it difficult to discern. His conclusions tell us little more than that he is attempting to re-litigate issues previously resolved by the judges hearing his bankruptcy and divorce cases.

More importantly, this court will not try to second guess what a state court judge has done in resolving the matters there. The potential for conflicting judgments makes the exercise of federal jurisdiction over what happened in state court distasteful. Even if Sharif's concerns were excepted from the exception, this court would exercise discretion under 28 U.S.C. § 1334(c)(2) to abstain from hearing them because they can probably be, or have been, timely adjudicated in the state court forum.

## VI. Allegation that Bankruptcy Court Did Not Handle Case Properly

Sharif complains in ¶ 26 that this court acted on mere verbal statements from lawyers without documentation in granting Defendants Fox, de'Medici and Block funds and placed trust property in the bankruptcy estate. What was improper about how this matter has been resolved? Civil Rule 9(b) requires that allegations of improper conduct be plead with specificity. What is he talking about? According to him the Defendants did not make a reasonable inquiry and did no research even though they had documentation through discovery and witnesses. We know that Sharif refused to tender discovery. These allegations are bare conclusions, devoid of any indication that this court has handled this matter improperly or that Fox, de'Medici and Block received funds improperly. What documentation was missing or not considered? The court did not place trust property into the bankruptcy estate; trust assets were declared to be property of the bankruptcy estate via a default judgment based on Count V of Wellness' adversary complaint as

-13-

of the date of filing because Sharif did not tender discovery. He deprived himself of the right and opportunity to dispute Wellness' claim that the Soad Wattar Trust was his alter ego. What discovery did Fox, de'Medici and Block have that showed something? What was improper about the request for or grants of compensation to Fox, de'Medici and Block? Sharif's failure to comply with discovery requests dominated and caused most of what has happened in this case.

### VII. RICO Enterprise Element

The court views the allegations regarding its conduct herein as part of Sharif's assertion in his Response to Newman's motion to dismiss, Docket 47 - p. 8, that the divorce and bankruptcy courts are an enterprise for purposes of his civil RICO claims. In the RICO context the term "enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise is an entity, "a group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). "In order to secure a conviction under RICO, the Government must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.'" *Id.* Sharif does not describe what makes the two courts an enterprise for RICO purposes. Nor does he connect an enterprise to a pattern of racketeering activity.

### VIII. Trustee's Conduct Regarding the South Barrington Property

According to ¶ 27 of the amended complaint Trustee Fox and his attorneys conspired with Sharif's estranged wife to allow her to stay in the South Barrington home in exchange for false testimony when they knew that a divorce court judge had ruled that the property was not a marital asset. He also asserts that this court left the decision regarding this up to Trustee Fox.

-14-

He alleges that this depleted the trust by not collecting rent. Again, these allegations assert that several Defendants acted improperly without specifying what happened. Where is the judgment that the residence in South Barrington is not a marital asset? Did such a ruling mean that the residence could not be part of the bankruptcy estate? What exactly did Trustee Fox do and what was improper about his conduct?

### IX. Bar Against Suing Trustees and Their Attorneys without Leave of Court

In any event, trustees can not be sued for their conduct in a case unless their appointing court allows the claimant to proceed. *Barton v. Barbour*, 104 U.S. 126, 136 (1881). A party seeking to sue a trustee "must make a prima facie case against the Trustee, showing that its claim is not without foundation." *In re Morris Senior Living*, 504 B.R. 490, 491 (Bankr. N.D. Ill. 2014) (*aff'd*, 526 B.R. 750 (N.D. Ill. 2014)). To sue Trustee Fox and his attorneys de'Medici and Block, Sharif has to show the appointing court that he has a prima facie case against Trustee Fox and his attorneys, who are bankruptcy estate professionals. The Soad Wattar Trust was declared to be his alter ego due to his failure to comply with his discovery obligations, not by something done by anyone else. "Because bankruptcy trustees serve important function as officers of the court in administration of bankruptcy cases, they are afforded limited personal immunity when operating pursuant to their authority and absolute immunity if operating directly in obedience to a court order." *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 559 (Bankr. N.D. Ill. 2000). Sharif can't sue Trustee Fox or his attorneys regarding their conduct in the bankruptcy case without first obtaining leave of this court to do so; he has not shown that he has leave of court to do so. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986) ("Non-judicial officials whose official duties have an integral relationship with the judicial process are entitled to absolute

-15-

immunity for their quasi-judicial conduct.") (internal citation omitted).

## X. Negligence and Conspiracy Claims

At ¶ 28 Sharif alleges that Trustee Fox and attorneys de'Medici and Block negligently and intentionally failed to inspect the property in South Barrington for 10 years, until August of 2010. That does not make sense. From the 2009 case filing date to 2010 is one year, not 10. He also complains that his estranged wife was allowed to reside there for 10 years as part of a conspiracy. What was wrong with that? Is this a conspiracy claim? Under Illinois law a civil conspiracy claimant has to allege an agreement to accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means, a tortious act committed in furtherance of that agreement and an injury caused by the defendants. Sharif's statement is unhelpful. No agreement to accomplish anything has been shown. Where are the circumstances or facts that they pursued an unlawful purpose or a lawful purpose by unlawful means? What did Trustee Fox, and attorneys de'Medici and Block do? Nothing is alleged with any specificity; he posits unsupported conclusions.

In any event, to recover on a negligence claim Sharif would have to show that the Defendants owe him a duty of care, a breach of that duty and an injury caused by the breach. Sharif has not alleged a duty owed him by the Defendants; nor has he alleged actionable breaches of duties of care.

Defendant Anderson, the attorney who once represented Sharif's wife in the divorce case, and the other Defendants have been sued for negligence in count 3. Sharif has not alleged that any of them owe him a duty. Nor has he insinuated or alleged that he was a client of any Defendant. Lawyers and other professionals do not owe a duty of care to non-clients. Sharif

-16-

conceded in his Response to his estranged wife's motion to dismiss that she is not a lawyer. He

can't sue the remaining Defendants for negligence because he has not plead the existence of an

attorney-client relationship and for that reason a breach of a duty owed him. *Kehoe v. Saltarelli,*

337 Ill.App.3d 669, 676 (1st Dist. 2003).

## XI. Absolute Litigation Privilege

Illinois law recognizes an absolute litigation privilege.

> Attorneys are privileged to publish defamatory matter concerning another in
> communications preliminary to proposed judicial proceeding, or in the institution
> of, or during the course and as part of, a judicial proceeding in which he
> participates as counsel, if it has some relation to the proceeding.

*O'Callaghan v. Satherlie,* 2015 IL App. (1st) 142152; 36 N.E.3d 999, 1008.

Sharif argued in his Response to Defendant Anderson's motion to dismiss that because

statements complained of occurred outside court proceedings in furtherance of an undefined

RICO conspiracy, what Anderson said is not covered by the litigation privilege. Response,

Docket 78, p .5. This is not true. The privilege covers statements made outside court as long

they are made during the course and as part of a proceeding in which the attorney participates as

counsel, if it is related to the proceeding. Sharif has not described or alleged a statement made

outside of, not part of or not related to a judicial proceeding. Anderson's litigation privilege

defense is valid.

## XII. Sharif's Bivens Claim

At paragraph 29 Sharif complains that Trustee Fox and attorney de'Medicit were federal

agents acting under color of federal law who used their position to wrongfully seize the proceeds

of Soad Wattar's life insurance policy from Hartford, belonging to Plaintiff's family, by falsely

-17-

claiming that it belonged to the bankruptcy estate. What specifically did they do? What was wrong about what, if anything, they did? This allegation fails to state a claim upon which relief can be granted. While it would be improper for this court to consider matters outside the amended complaint to determine whether it states a claim for which relief can be granted, the court notes that Sharif fails to account for a district court's 2017 ruling in *Estate of Soad Wattar v. Hartford Life and Annuity Insurance Company*, 2017 WL 552875, * 2 (N.D. Ill. February 10, 2017). District Judge Shah rejected claims that the life insurance policy's proceeds (and assets held by Wells Fargo) belonged to the Soad Wattar Trust or to Sharif's sister, Ragda Sharifeh. In Hartford's motion to dismiss it was noted that:

> Hartford attaches to its motion what it identifies as the insurance policy itself, along with all endorsements and beneficiary changes. . . . According to that document, the owner of the policy, Richard Sharif, submitted a request to change the beneficiary from "Richard Sharif Revocable Living Trust U/A dated 04/24/07" to Ragda Sharifeh on June 4, 2009 . . . But about an hour later, Sharif submitted a request to change the beneficiary back to the Richard Sharif Revocable Living Trust . . . Hartford says, consistent with the documents, the trust remained the beneficiary of the policy, and no further changes were made. Moreover, because Sharif had listed the policy among his assets and the trust as an entity within his control when he filed for bankruptcy . . ., Hartford argues that changing the policy's beneficiary to Ragda Sharifeh would have violated several bankruptcy laws and likely would have been voided had Sharif not reversed course.

*Id.*

Sharif's assets, including the Soad Wattar Trust, had been held to be assets of the bankruptcy estate as of the February 24, 2009 filing date. Sharif had no right to change the beneficiary on June 4, 2009. *See In re Sharif*, 564 B.R. 328, 345 (Bankr. N.D. Ill. 2017) ("The July 6, 2010 Order made all of the Soad Wattar Trust assets property of the bankruptcy estate as of the filing of the bankruptcy case on February 24, 2009."). It was noted there:

-18-

> It is well established that property of the Debtor in the possession, custody and control of [his] alter ego comprises property of the estate at the commencement of the case, and that bankruptcy courts have the power to disregard separate corporate entities so as to reach the assets of its non-debtor alter ego to satisfy the debts of the Debtor.

*In re Sklarin*, 69 B.R. 949, 954 (Bankr. S.D. Fla. 1987) (quoting *In re F & C Services, Inc.*, 44 B.R. 863, 868 (Bankr. S.D. Fla. 1984)).

Sharif's allegation that Trustee Fox and his counsel de'Medici are federal agents who acted under color of federal law to wrongfully seize the insurance policy is not well taken. The *Bivens* doctrine provides an implied cause of action against federal officials who deprive plaintiffs of their constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 399 (1971). The defendant has to be a federal officer and must not have judicial immunity. *Lerch v. Boyer*, 929 F.Supp. 319, 323 (N.D. Ind. 1996). Sharif's problem is that chapter 7 trustees are not federal officers; they merely represent bankruptcy estates and are entitled to quasi-judicial immunity. *In re Hughes Drilling Co.*, 75 B.R. 196, 197 (Bankr. W.D. Okla. 1987) ("The trustee is a representative of the estate, not an officer, agent, or instrumentality of the United States.").

### XIII. The Mandate Rule

By refusing to dismiss this case without prejudice, which would allow Sharif to file a second amended complaint, this court is invoking the mandate rule to halt Sharif's efforts to re-litigate settled issues. He is bound by that rule which requires that he comply with both the spirit and letter of the mandate issued by the Seventh Circuit in 2015 when it affirmed the district court ruling that the Soad Wattar Trust was the Debtor's alter ego and therefore property of the bankruptcy estate.

-19-

The Seventh Circuit has explained that parties and lower courts are bound by its rulings:

> We call this obligation to follow the judgment of a reviewing court the mandate
> rule, a relative of the law of the case. Under the mandate rule . . . the district court
> is required to comply with the express or implied rulings of the appellate court.

*In re A.F. Moore & Associates, Inc.*, 974 F.3d 836, 839-40 (7th Cir. 2020) (internal citation

omitted)

### XIV. Statute of Limitations Concerns

The amended complaint lacks dates of the conduct complained of. This makes it difficult

to discern whether statutes of limitations or repose have been violated.

### XV. Conclusion

Sharif's RICO claims assert the same theories and claims already resolved against him

herein. He hopes to accomplish through the RICO Act what his prior appeals failed to do,

unwind the default judgment he voluntarily incurred. He seeks $5,000,000 in damages he claims

to have incurred due to the conduct of others. The conduct of Trustee Fox, and attorneys de'

Medici and Block was generally authorized when done by court orders. Sharif is trying to get

another bite at the apple

The RICO Act is not a vehicle to collaterally attack the judgment of the Seventh Circuit

which affirmed the district court that affirmed this court's default judgment order. It is not a

vehicle for reopening settled matters.

Sharif has not plead predicate acts of racketeering which were the "but for" and

"proximate cause" of injury to him. Perhaps, he can't do so because he caused the injuries he

complains of by not complying with his discovery obligations. He simply posits conclusions. He

comes nowhere close to establishing the requisite direct relationship between Defendants'

alleged actions and his injury.

Sharif's claims may be barred on res judicata grounds by the affirmed district court judgment. He is trying to prolong and re-litigate several matters. The central allegations in this suit have been resolved for several years. It is time to move on.

Sharif has not alleged with specificity two predicate acts or an actionable pattern necessary to show civil RICO liability under 18 U.S.C. § 1962(c). Nor has he alleged that the Defendants formed an agreement in violation of the RICO Act or Illinois conspiracy law.

By separate orders the court will dismiss this adversary proceeding as to Defendants Fox, de'Medici, Block, Hamabaroush and Anderson in its entirety with prejudice.

### XVI. Order to Show Cause

Rule 9011(b) of the Federal Rules of Bankruptcy Procedure states:

(b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bank. P. 9011(b).

If these provisions are violated, after notice and a reasonable opportunity to respond, the court may issue appropriate sanctions. *Id.,* at 9011(c). Rule 9011(c)(1)(B) states:

> On its own initiative, the court may enter an order describing the specific
> conduct that appears to violate subdivision (b) and directing an attorney,
> law firm, or party to show cause why it has not violated subdivision (b)
> with respect thereto.

Fed. R. Bankr. P. 9011(c)(1)(B).

Sharif's amended complaint is devoid of any right to relief as to all of the Defendants. Any complaints about Mr. Anderson can be addressed in the divorce case. Any complaints about his estranged wife can be addressed there, too. Complaints about Chapter 7 Trustee Fox and his attorneys de'Medici and Block can be addressed to this court, assuming that he has a prima facie case against either of them. He complains about their fee requests but fails to mention that the bankruptcy estate has to pay the Trustee and his attorneys to defend themselves in this action. He may be causing the bankruptcy estate and other parties to incur unnecessary litigation costs.

In his Response to the motion to dismiss filed by de'Medici and Block, Sharif suggests that this court should not rely on its prior rulings because they are pending appeals in the reviewing courts. Response, Docket 77, ¶ 4, p. 2. Is Sharif trying to delay the progress of this case by distracting the bankruptcy estate's representative and his professionals by engaging them in the defense of this baseless lawsuit while his appeals are pending in the reviewing courts? If so, this may be improper. If he wants to stay a case pending an appeal he can ask this court or the reviewing court to stay this case pending consideration of the appeal. *See* Federal Rule of Bankruptcy Procedure 8007 - Stay Pending Appeal; Bonds; Suspension of Proceedings. Is his purpose in pursuing this lawsuit to delay the progression of this case?

Richard Sharif is ordered to appear before this court to state whether he should be sanctioned for filing the cause of action herein to hinder and delay the administration of

bankruptcy case 09-05868 and related adversary proceedings or to needlessly increase the costs of litigation of other parties.

The hearing will be held virtually on Tuesday, May 18, 2021 at 2:00 p.m. via the Zoom for Government app. (https://www.zoomgov.com). The Meeting Number is 161 273 2896. The Passcode is 778 135.

This Memorandum Opinion constitutes this court's conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052(a)(3). Separate orders will be entered granting the motions to dismiss filed herein by Luma Hambaroush-Sharif, Jonathan Anderson, Trustee Horace Fox Jr., Bradley Block and Bruce de'Medici.

Date: April 9, 2021                    ENTERED:

 

_____
**Jacqueline P. Cox**
**United States Bankruptcy Judge**